**PAUSE TECHNOLOGY LLC,**
Plaintiff–Appellant,

v.

**TIVO INC., Defendant–Appellee.**

No. 04–1263.

United States Court of Appeals,
Federal Circuit.

March 14, 2005.

Joseph A. Micallef, Arnold & Porter LLP, of Washington, DC, argued for plaintiff-appellant. Of counsel were Joel M. Freed, Robert Worrall and Matthew Bathon.

Perry Goldberg, Irell & Manella LLP, of Los Angeles, California, argued for defendant-appellee. With him on the brief were Morgan Chu and Alexander C.D. Giza.

Before NEWMAN, LOURIE, and LINN, Circuit Judges.

LINN, Circuit Judge.

Pause Technology LLC ("Pause") appeals from a judgment entered by the United States District Court for the District of Massachusetts, in favor of TiVo Inc. ("TiVo"), following entry of summary judgment that TiVo's digital video record-

er ("DVR") products 2.0 and above do not infringe U.S. Reissue Patent No. 36,801 ("the '801 reissue patent"). *Pause Tech. LLC v. TiVo Inc.*, No. 01–11657–PBS (D.Mass. Feb. 9, 2004) (*"Order"*). Because TiVo's invalidity counterclaim remains unadjudicated before the district court, the present appeal is not from a final decision within the meaning of 28 U.S.C. § 1295(a)(1). Therefore, this court lacks jurisdiction, and the appeal is dismissed subject to reinstatement on the conditions set forth in this opinion.

## I. BACKGROUND

On September 25, 2001, Pause filed suit in the United States District Court for the District of Massachusetts against TiVo alleging that TiVo's DVR technology infringed certain claims of the '801 reissue patent. On December 26, 2001, TiVo raised affirmative defenses of invalidity and non-infringement and counterclaimed for a declaratory judgment of invalidity and non-infringement. (Answer and Countercl. at 2–3.) Pause's claims of infringement implicate two classes of TiVo's DVR technology. One class runs software versions below version 2.0, and the other class runs version 2.0 and above.

On February 2, 2004, in a Memorandum and Order, the district court, noting that "TiVo move[d] for summary judgment of non-infringement and invalidity with respect to versions 2.0 and above," construed two claim limitations and "allow[ed] TiVo's motion for summary judgment of noninfringement." *Pause Tech. LLC v. TiVo Inc.*, No. 01–11657–PBS, slip op. at 1, 22–23 (D.Mass. Feb. 2, 2004) (*"Memorandum"*). On February 6, 2004, the district court entered judgment. *Pause Tech. LLC v. TiVo Inc.*, No. 01–11657–PBS (D.Mass. Feb. 6, 2004). On February 9,

2004, the district court entered a one-page amended judgment (to correct a typographical error), which stated:

> Pursuant to this Court's Memorandum and Order dated February 2, 2004, allowing TiVo's Motion for Summary Judgment on non-infringement with respect to products 2.0 and above, it is ORDERED and ADJUDGED that judgment is hereby entered in favor of the defendant TiVo.[1]

*Order*. Although the district court's docket sheet designated the case terminated on March 1, 2004, neither the docket sheet nor the record indicates the district court's disposition of the invalidity counterclaim.

On March 3, 2004, Pause filed a notice of appeal to this court. Neither party's brief indicate the disposition of the invalidity counterclaim. Pause's "Jurisdictional Statement" says that "[t]his is an appeal from a final judgment of the district court entered on February 6, 2004, and [the Federal Circuit] has jurisdiction pursuant to 28 U.S.C. § 1295(a)(1)." TiVo's principal brief states that "[the district court] did not rule on TiVo's motion for summary judgment of invalidity," but TiVo does not question this court's jurisdiction. On December 27, 2004, this court cited the apparently unresolved counterclaim and issued an order to "show cause as to why th[e] appeal should not be dismissed for lack of jurisdiction" under *Nystrom v. TREX Co.*, 339 F.3d 1347 (Fed.Cir.2003). *Pause Tech. LLC v. TiVo Inc.*, No. 04–1263 (Fed.Cir. Dec. 27, 2004).

In its supplemental brief, Pause argues that this court has jurisdiction under 28 U.S.C. § 1295(a)(1) because the district court ordered judgment in favor of TiVo on February 6, 2004, and because the docket sheet shows that the case was dis-

---

1. The district court's reference in its order to "products 2.0 and above" leaves uncertain the disposition of the infringement question as to products running versions below 2.0. This should be clarified before reinstating the appeal.

missed. Pause contends that the district court implicitly dismissed the invalidity counterclaim as moot. In the alternative, Pause asks that we give the parties leave to ask the district court for a supplemental order clarifying the disposition of the lawsuit and, upon a showing that the judgment is final, that we reinstate the appeal in accordance with the procedure followed in *Brookhill–Wilk 1, LLC v. Intuitive Surgical, Inc.,* 334 F.3d 1294, 1297 n. 1 (Fed. Cir.2003). TiVo, on the other hand, acknowledges that its counterclaim remains pending before the district court, expresses regret that it did not earlier recognize the jurisdictional issue, and contends that we have no jurisdiction under *Nystrom.* TiVo disagrees with Pause's argument that the district court implicitly dismissed the invalidity counterclaim.

On January 13, 2005, the court heard oral argument and explored with the parties the jurisdictional issue related to the invalidity counterclaim and the merits of the appeal. The court now concludes that the appeal is not from a final judgment and that the court has no jurisdiction.

## II. ANALYSIS

### A. Standard of Review

■ Whether this court has jurisdiction over an appeal taken from a district court decision is a question of law which we address in the first instance. *See Nystrom,* 339 F.3d at 1349–50.

### B. Jurisdiction and Finality

■ "Federal courts are not courts of general jurisdiction; they have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto.... For that reason, every federal appellate court has a special obligation to satisfy itself ... of its own jurisdiction ...." *Bender v. Williamsport Area Sch. Dist.,* 475 U.S. 534, 541, 106 S.Ct. 1326, 89 L.Ed.2d 501

(1986) (internal quotation marks and citations omitted); *see also Kinetic Builder's, Inc. v. Peters,* 226 F.3d 1307, 1311–12 (Fed.Cir.2000). In doing so, we are obligated to consider whether there is a final judgment of the district court, 28 U.S.C. § 1295(a)(1) (2000), or a basis for jurisdiction over an interlocutory order, *id.* § 1292(c). *See also Pandrol USA, LP v. Airboss Ry. Prods., Inc.,* 320 F.3d 1354, 1362 (Fed.Cir.2003); *Syntex Pharms. Int'l, Ltd. v. K–Line Pharms., Ltd.,* 905 F.2d 1525, 1526 (Fed.Cir.1990). On matters relating to this court's jurisdiction, we apply Federal Circuit law, not that of the regional circuit from which the case arose. *See H.R. Techs., Inc. v. Astechnologies, Inc.,* 275 F.3d 1378, 1382 (Fed.Cir.2002); *State Contracting & Eng'g Corp. v. Fla.,* 258 F.3d 1329, 1334 (Fed.Cir.2001); *Woodard v. Sage Prods., Inc.,* 818 F.2d 841, 844 (Fed.Cir.1987) (en banc).

■ "This court's 'final judgment rule,' as applied to patent disputes arising under 28 U.S.C. § 1338, is set forth at 28 U.S.C. § 1295. Section 1295's final judgment rule mirrors that of its counterpart found at 28 U.S.C. § 1291." *Nystrom,* 339 F.3d at 1350. Under the rule, parties may only appeal a "final decision of a district court." 28 U.S.C. § 1295(a)(1). In *Catlin v. United States,* the Supreme Court defined a final judgment as a decision by the district court that "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." 324 U.S. 229, 233, 65 S.Ct. 631, 89 L.Ed. 911 (1945); *see also Coopers & Lybrand v. Livesay,* 437 U.S. 463, 467, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1978). By requiring parties to "raise all claims of error in a single appeal following final judgment on the merits," *Firestone Tire & Rubber Co. v. Risjord,* 449 U.S. 368, 374, 101 S.Ct. 669, 66 L.Ed.2d 571 (1981), § 1295, like its counterpart § 1291, "forbid[s] piecemeal disposition on

appeal of what for practical purposes is a single controversy ...." *Cobbledick v. United States,* 309 U.S. 323, 325, 60 S.Ct. 540, 84 L.Ed. 783 (1940). The Supreme Court has further explained that this final judgment rule

> emphasizes the deference that appellate courts owe to the trial judge as the individual initially called upon to decide the many questions of law and fact that occur in the course of a trial. Permitting piecemeal appeals would undermine the independence of the district judge, as well as the special role that individual plays in our judicial system. In addition, the rule is in accordance with the sensible policy of "avoid[ing] the obstruction to just claims that would come from permitting the harassment and cost of a succession of separate appeals from the various rulings to which a litigation may give rise, from its initiation to entry of judgment." The rule also serves the important purpose of promoting efficient judicial administration.

*Firestone,* 449 U.S. at 374, 101 S.Ct. 669 (internal citations omitted).

As we observed in *Nystrom,* apart from appeals from judgments that are "final except for an accounting" under 28 U.S.C. § 1292(c)(2),

> the rules of finality that define the jurisdiction of this court do not contain special provisions for patent cases or admit to exceptions for strategic reasons or otherwise, short of meeting the conditions specified in Rule 54(b) or 28 U.S.C. § 1292(b), (c)(1). Thus, piecemeal litigation is as strictly precluded by the rule of finality for patent cases as it is for any other case. Until the rules are changed, the parties and the district courts are obliged to conclude patent cases in strict compliance with the finality rule to avoid unnecessary litigation

over jurisdictional issues in perfecting an appeal.

339 F.3d at 1350.

## C. Discussion

Despite our repeated admonitions, this court again confronts an appeal with a jurisdictional defect. For whatever the reasons, parties too frequently are not reviewing the actions of the district courts for finality before lodging appeals. When such actions later are discovered to be not ripe for review, needless delay and inefficiency result, as reflected in the proceedings in this appeal. To promote the policies explained in *Firestone,* our court will insist upon diligent compliance by counsel with the rule of finality. The importance of the rule of finality is underscored by the court's recent amendment of Federal Circuit Rule 28(a)(5), which now requires that the jurisdictional statement also include a statement that the judgment or order appealed from is final or otherwise appealable.

█ In the present case, the district court did not expressly dispose of the invalidity counterclaim. Indeed, there was no adjudication of it and no indication that TiVo concurred in a disposition that would permit a dismissal without prejudice and without a finding of mootness. *See Liquid Dynamics Corp. v. Vaughan Co.,* 355 F.3d 1361, 1370–71 (Fed.Cir.2004); *Nystrom,* 339 F.3d at 1351. Furthermore, there was no finding that there was no longer a "controversy," *i.e.,* no finding that the counterclaim was moot. Thus, the invalidity counterclaim remains pending. A "judgment that does not dispose of pending counterclaims is not a final judgment." *Nystrom,* 339 F.3d at 1351 (quoting *Pandrol,* 320 F.3d at 1362).

Pause contends that we should deem the invalidity counterclaim impliedly dismissed. However, even if the district

court could impliedly dispose of the invalidity defense in its ruling on infringement, the invalidity counterclaim is a separate claim that remains unresolved. *See Altvater v. Freeman,* 319 U.S. 359, 363, 63 S.Ct. 1115, 87 L.Ed. 1450 (1943); *see also Pandrol,* 320 F.3d at 1361–63 (noting distinction between invalidity defense and counterclaim but recognizing finality of judgment where district court found invalidity defenses waived after counterclaim dismissed without prejudice and not revived). There is no dispute that the district court did not expressly dismiss the invalidity counterclaim and that a pending counterclaim precludes jurisdiction absent certification under Rule 54(b) of the Federal Rules of Civil Procedure. Instead, Pause would have us find that the district court impliedly dismissed the invalidity counterclaim, that the judgment is final, and that no Rule 54(b) certification is necessary. Such a finding would be contrary to the text and purpose of Rule 54(b), including its "negative effect" on whether an appeal is ripe for review. *Sears, Roebuck & Co. v. Mackey,* 351 U.S. 427, 435, 76 S.Ct. 895, 100 L.Ed. 1297 (1956). Moreover, such a ruling, that the district court impliedly dismissed claims in a multiple claims suit, would be the first step toward eviscerating Rule 54(b).[2]

---

2. Early on, uncertainty surrounded application of Rule 54(b) because it was an exception to the common law rule that a "final decision of the whole case" was required to satisfy § 1291. *Sears,* 351 U.S. at 431–32, 76 S.Ct. 895. Under the initial wording of Rule 54(b), the Court opined that compulsory counterclaims had to be disposed of for a claim to be sufficiently final and for Rule 54(b) certification to be available. *Cold Metal Process Co. v. United Eng'g & Foundry Co.,* 351 U.S. 445, 451–52, 76 S.Ct. 904, 100 L.Ed. 1311 (1956). One of the problems with this interpretation was that parties had difficulty determining whether a counterclaim was compulsory or permissive, *see id.* at 452, 76 S.Ct. 904, and thus "the jurisdictional time for taking an appeal from a final decision on less than all of the claims in a multiple claims action in some instances expired earlier than was foreseen by the losing party," *Sears,* 351 U.S. at 434, 76 S.Ct. 895.

The rule was amended and in its current form "is limited expressly to multiple claims actions in which 'one or more but [fewer] than all' of the multiple claims have been finally decided and are found otherwise to be ready for appeal." *Id.* at 435, 76 S.Ct. 895. In *Cold Metal Process,* the Court held that Rule 54(b) "treats counterclaims ... like other multiple claims" and that a party could appeal a decision where a counterclaim—compulsory or permissive—remained pending if the district court made the Rule 54(b) certification. 351 U.S. at 452–53, 76 S.Ct. 904. The Supreme Court said that the district court, in applying Rule 54(b), was a "dispatcher,"

permitted to determine, in the first instance, the appropriate time *when each "final decision"* upon "one or more but less than all" of the claims in a multiple claims action is ready for appeal. This arrangement already has lent welcome certainty to the appellate procedure. Its "negative effect" has met with uniform approval. The effect so referred to is the rule's specific requirement that for "one or more but less than all" multiple claims to become appealable, the District Court must make both "an express determination that there is no just reason for delay" and "an express direction for the entry of judgment." A party adversely affected by a final decision thus knows that his time for appeal will *not* run against him until this certification has been made.

*Sears,* 351 U.S. at 435–46, 76 S.Ct. 904.

If an appeal could be taken under § 1291 or § 1295 from a district court's determination of some claims in a multiple claims action, on the premise that the district court impliedly disposed of the remaining claims, Rule 54(b) would be superfluous and its "negative effect" eviscerated. An appellate court could take an appeal whenever it appeared, as far as the issues before the district court were concerned, the case was over, regardless whether claims remained pending. In that scenario, the appellate court simply could deem the unresolved claims "moot or dead." If that were permitted, the appellate court would control the timing of an appeal and the district court would no longer be "dispatcher." A losing party would be uncertain whether an appellate court would deem unadjudicated claims impliedly dismissed and

There are cases in which the Supreme Court found appellate jurisdiction despite an alleged technical defect in the judgment. However, none of those cases deals with a circumstance in which a claim or counterclaim remains unadjudicated. These cases also do not stand for the proposition that an appellate court can deem remaining claims impliedly dismissed. *See, e.g., Bankers Trust Co. v. Mallis,* 435 U.S. 381, 383, 98 S.Ct. 1117, 55 L.Ed.2d 357 (1978) (assessing "whether a decision of a district court can be a 'final decision' for purposes of § 1291 if not set forth on a document separate from the opinion"); *Foman v. Davis,* 371 U.S. 178, 181–82, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962) (assessing whether, taken together, two notices of appeal were sufficient to satisfy the appellate pleading requirement of the Federal Rules of Civil Procedure); *United States v. F.& M. Schaefer Brewing Co.,* 356 U.S. 227, 231–36, 78 S.Ct. 674, 2 L.Ed.2d 721 (1958) (assessing whether a district court opinion, argued to be the final decision of the case, sufficiently conformed to the rules of procedure for judgments which order recovery of money damages to start the appeals time clock running); *United States v. Hark,* 320 U.S. 531, 534–35, 64 S.Ct. 359, 88 L.Ed. 290 (1944) (assessing whether an opinion or the formal entry of judgment started the appeals time clock).

Finally, Pause requests that the court grant it leave to seek remedial action at the district court and thereafter to reinstate the appeal. It has been this court's experience that such action generally does not serve the interests of efficiency and often results in greater complexity and further delay. *See, e.g., TI Group Auto. Sys. (N. Am.), Inc. v. VDO N. Am., L.L.C.,* 375 F.3d 1126, 1132–33 (Fed.Cir.2004). Such a result is precisely what the rule of

finality was meant to avoid. *Firestone,* 449 U.S. at 374, 101 S.Ct. 669. Nevertheless, because this court has held that a premature notice of appeal ripens upon subsequent action of the district court, *E-Pass Techs., Inc. v. 3Com Corp.,* 343 F.3d 1364, 1367 (Fed.Cir.2003) (reinstating appeal after district court dismissed invalidity counterclaims without prejudice); *Storage Tech. Corp. v. Cisco Sys., Inc.,* 329 F.3d 823, 830 (Fed.Cir.2003) (reinstating appeal after district court entered Rule 54(b) certification to account for lingering invalidity counterclaim), we grant Pause leave to seek remedial action at the district court and thereafter to reinstate the appeal, *see Cold Metal Process,* 351 U.S. at 449–51 & n. 5, 76 S.Ct. 904 (approving permission granted by the court of appeals to permit the district court to exercise its discretion to amend its judgment by addition of Rule 54(b) certification). Accordingly, this appeal is dismissed for lack of jurisdiction, subject to reinstatement under the same docket number without the payment of an additional filing fee if, within 30 days of the date of this opinion, a party appeals from the entry of a final judgment on the entire case or obtains a certification for appeal pursuant to Rule 54(b). If the appeal is reinstated, it will be decided by the present panel, based on the briefs already filed and the oral argument heard on January 13, 2005.

*DISMISSED*

### III. COSTS

No costs.

---

again wonder when "the jurisdictional time for taking an appeal from a final decision on less than all of the claims in a multiple claims action" would expire.